UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ANGELA C. MCGUIRE-PIKE
And RICHARD S. PIKE,　　　　　　　　　　　　　　　No. 14-13365 ta7

　　　　Debtors.

## **MEMORANDUM OPINION**

Creditors Brian and Michelle Crawford moved to dismiss Debtors' Chapter 7 case under § 707(a),[1] alleging the case was filed in bad faith. The Court held a final hearing on the motion on April 28, 2015, at which the Debtors and the Crawfords appeared pro se. For the reasons set forth below the Court will deny the motion.

I.　　　FINDINGS[2]

Debtors and the Crawfords are neighbors, living several houses apart in a residential area on Albuquerque's west side. Debtors moved into the neighborhood in about 2008.

Debtor and the Crawfords used to be friendly and their children used to play together. By the middle of June, 2011, however, they had a serious falling out over the rightful ownership of two old pickup trucks and some tools.

Mr. Crawford sued Debtors in the Metropolitan Court of Bernalillo County, New Mexico in 2012, commencing an action captioned *Brian L. Crawford, et al v. Richard Pike, et al,* no. T-4-CV-2012-007731.

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.
[2] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

The Metropolitan Court awarded the Crawfords[3] a $7,725 money judgement against Debtors on October 8, 2014 (the "Judgment").

After entry of the Judgment, Mr. Pike used his Chevrolet Tahoe to haul off several loads of personal property from the house. The Crawfords allege it was valuable property that Mr. Pike was hiding or transferring. Mr. Pike said he was hauling trash or used household items to donate to local charities. The Crawfords did not carry their burden of proving that Mr. Pike was transferring or concealing assets.

Before filing bankruptcy the Debtors made improvements to their house and yard, including landscaping work, interior remodeling, and new furniture. There is little evidence about when the improvements were made, how much they cost, or why Debtors chose to make the improvements when they did. The Court finds that there was nothing improper about the improvements.

In response to the Crawfords' efforts to collect the Judgment (e.g., seeking a writ of attachment and a transcript of judgment), Debtors filed this bankruptcy case on November 13, 2004. Debtors previously filed a bankruptcy case on March 9, 1998, receiving a Chapter 7 discharge on April 22, 1999.

Mrs. Pike is employed as a legal technician with the U.S. Department of Agriculture Office of General Counsel. She is an hourly employee and earns $3,579.33 a month on average.

Richard Pike is not employed and receives worker's compensation and social security benefits totaling $2,622.54 each month. Mr. Pike was initially injured in 2011, and has been receiving some sort of assistance since then. The maximum Mr. Pike can receive in disability

---

[3] At some point Mrs. Crawford was added as an additional plaintiff.

payments is 80% of his income prior to the injury. Debtors' income decreased when Mr. Pike was injured.

Debtors have two daughters, ages 16 and 18. Each daughter receives approximately $361.00 a month in social security dependent coverage, due to Mr. Pike's disability. Both daughters are dependents. On the petition date the Debtors' current monthly income was:

| | |
|---|---|
| Mr. Pike | $2,622.54 |
| Mrs. Pike | $3,579.33 |
| Younger daughter: | $ 361 |
| Elder daughter: | $ 361 |
| Total: | <u>$6,923.87</u> (or $83,086 per year) |

The elder daughter's monthly amount will be discontinued shortly, if it hasn't been already, because it was due to stop when she turned 18 or graduated from high school. She was scheduled to graduate in May, 2015. Without her monthly government stipend, the annual income for the household would be $6,562.87 per month or $78,754.44 per year. In less than two years, when the younger daughter turns 18 or graduates, the annual income will drop to $6,035.20 per month or $74,422.44 per year.

The Crawfords' attempt to collect the Judgment was a major reason for the bankruptcy filing, but it was not the only reason. Debtors have about $19,000 of dischargeable debt, including the Judgment. Debtors' income was reduced by Mr. Pike's work-related injury. They have two teen-aged daughters, and their monthly household expenses exceed their net monthly income.

There is no evidence that Debtors received any assets from Mrs. Pike's father's probate estate, or that Debtors receive any income from breeding or showing their eight beagles.

Debtors' lifestyle is relatively modest. Their house, worth about $190,000, is not particularly large or expensive. An annual income of $74,000-$83,000 is not unusually high for a family of four, although it is above average. The Debtors' cars are older and not flashy or expensive. Nothing in their monthly expense budget seems out of line.

Debtors retained a bankruptcy attorney to prepare their schedules and statement of financial affairs, file their case, and attend the meeting of creditors. The attorney did not represent Debtors at the final hearing on the motion to dismiss.

There are some mistakes in Debtors' schedules and statement of financial affairs. The main errors are:

- On the Statement of Financial Affairs, Debtors report that Mrs. Pike made $23,932.78 in 2014. The trial evidence showed that Mrs. Pike made closer to $36,000 that year;
- The Capital One Auto Finance secured claim for $15,250 was most likely paid when Debtors' purchased a Chevrolet Malibu, and therefore is no longer a debt;
- The two GM Financial claims of about $8,500 each appear to be duplicates;
- The "Wfds" debt for $6,580 is an unsecured debt and should not have been reported on Schedule D;
- The Check N' Go and the Axcssfn/Cngo claims for about $1,800 each appear to be duplicates;
- The two Credit One Bank debts are probably duplicates;
- The two Kohl's debts are probably duplicates.

- Mrs. Pike's student loan debt is approximately $81,416.25. Mrs. Pike consolidated this debt, and the many "NM Ed Asst" claims listed on Schedule F are likely the original student loans that have since been consolidated.

The Pikes are not particularly sympathetic bankruptcy debtors. This is their second bankruptcy case. They have a history of bringing suits against creditors, mostly in federal court, apparently alleging violations of the Unfair Debt Collection Practices Act.[4] The Metropolitan Court judge obviously did not think much of how they disposed of the Crawfords' trucks and tools. Finally, Mr. Pike apparently drew unemployment insurance to which he was not entitled, to the tune of $14,810.28.[5] That debt apparently would have been nondischargeable under § 523(a)(2), but for the reaffirmation of the debt.

On the other hand, the Crawfords are not sympathetic creditors. Both have criminal records. At the time he signed the pickup truck titles over to Mr. Pike, Mr. Crawford was on parole and Mrs. Crawford was incarcerated in Arizona. The Crawfords also filed a Chapter 7 bankruptcy case, in mid-2013. The Crawfords' litigation of this matter has been extremely aggressive. They contacted other creditors with a letter containing reckless allegations and disclosing the Debtors' social security numbers. The motion to dismiss contains numerous inflammatory allegations based almost entirely on supposition and conjecture. They filed a disciplinary complaint against Debtor's bankruptcy counsel. The Crawfords spy on the Debtors, take pictures of them, and do all they can to make Debtors' life in the neighborhood unpleasant.

---

[4] Approximately eight suits were brought in federal court between 2002 and 2012. One additional suit was brought in state court.
[5] See the Reaffirmation Agreement with the NM Department of Workforce Solutions, doc. 22.

II.   DISCUSSION

Section 707(a)[6] provides:

The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
(1) unreasonable delay by the debtor that is prejudicial to creditors;
(2) nonpayment of any fees or charges required under chapter 123 of title 28;
(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

The burden is on the moving party to establish cause under §707(a). *In re Bushyhead*, 525 B.R. 136, 137 (Bankr. N.D. Okla. 2015) (citing *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza),* 719 F.3d 1253, 1266 (11th Cir. 2013)); *Simon v. Amir (In re Amir),* 436 B.R. 1, 16 (6th Cir. BAP 2010).

Although not listed as one of the enumerated factors constituting "cause" for dismissal under § 707(a), most courts have held that evidence of a debtor's "bad faith" in filing a Chapter 7 case is cause for dismissal. *In re Snyder*, 509 B.R. 945, 950 (Bankr. D.N.M. 2014) (citing *Indus. Ins. Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126–27 (6th Cir. 1991)). *See also 6 Collier on Bankruptcy* ¶ 707.03[1] (16th ed. 2010) (the enumerated factors of § 707(a) are meant to be illustrative and the Court may dismiss the case on other grounds for cause). While the Tenth Circuit has not yet ruled on the issue, this Court has adopted the view that bad faith can constitute cause for dismissal under § 707(a). *Snyder*, 509 B.R. at 950.

---

[6] The Crawfords did not cite to §707(b) in their motion to dismiss. At the final hearing, the Crawfords argued bad faith dismissal under §707(a) rather than abuse of the provisions of Chapter 7 under §707(b). While some of the trial evidence could be construed as relevant to a § 707(b) action, it was also relevant to the Crawfords' "bad faith" argument under § 707(a), so there was no implied consent to amend the pleadings to raise an unpleaded §707(b) dismissal. The Court therefore will not address § 707(b).

-6-

Case 14-13365-t7    Doc 45    Filed 07/10/15    Entered 07/10/15 08:40:35 Page 6 of 12

To determine whether a chapter 7 case was filed in bad faith, courts must review the totality of the circumstances. *In re Piazza*, 719 F.3d 1253, 1271–72 (11th Cir. 2013) (§ 707(a) bad faith inquiry requires the bankruptcy court to sift through the totality of the circumstances to see that injustice or unfairness is not done); *In re Quinn*, 490 B.R. 607, 618 (Bankr. D.N.M. 2012) (applying a totality of the circumstances test to evaluate the debtor's good faith); *In re Standiferd*, 2008 WL 5273690, at *12 (Bankr. D.N.M. 2008) (§ 707(a) bad faith inquiry requires analysis of the totality of the circumstances); *Blumenberg v. Yihye (In re Blumenberg)*, 263 B.R. 704, 715 (Bankr. E.D.N.Y. 2001) (same); *In re Griffieth*, 209 B.R. 823, 826 (Bankr. N.D.N.Y. 1996) (applying multiple factors viewed together on an ad hoc basis to determine bad faith based on a totality of the circumstances).

Various factors have been identified and applied to determine whether bad faith exists:

1. Whether the debtor's manipulations (if any) had the effect of frustrating one particular creditor;
2. The absence of an attempt to pay creditors;
3. The debtor's failure to make significant lifestyle changes;
4. Whether the debtor has sufficient resources to pay a substantial portion of debts;
5. Whether the debtor inflated expenses to disguise financial well-being;
6. Whether the debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors;
7. Whether the debtor reduced his creditors to a single creditor in the months prior to filing his petition;
8. Whether the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
9. Whether the debtor filed the case in response to a judgment in pending litigation;
10. The unfairness of using Chapter 7;
11. Whether the debtor is paying debts to insiders;
12. Whether the debtor transferred assets;
13. Whether the debtor employed a deliberate and persistent pattern of evading a single major creditor;
14. Whether the debtor failed to make candid and full disclosure;
15. Whether the debts are modest in relation to assets and income; and
16. Whether there are multiple bankruptcy filings or other procedural "gymnastics."

*In re Lombardo*, 370 B.R. 506, 512 (Bankr. E.D.N.Y. 2007) (listing 14 of the factors); *In re O'Brien*, 328 B.R. 669, 675 (Bankr. W.D.N.Y. 2005) (same); *In re Quinn*, 490 B.R. at 618 (listing all 16 factors but emphasizing the first six); *In re Baird*, 456 B.R. 112, 116–17 (Bankr. M.D. Fla. 2010) (listing 15 factors).

Conduct that would support a denial of discharge under § 727 or nondischargeability action under § 523 cannot be considered as part of a bad faith analysis under § 707(a). "[W]here both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first. Therefore, a debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct." *In re Padilla*, 222 F.3d 1184, 1192 (citations omitted). *See also In re Quinn*, 490 B.R. at 617 ("[D]ismissal of a Chapter 7 case for cause may not be based exclusively or primarily on a debtor's conduct that forms the basis for objections to discharge under 11 U.S.C. § 727 or objections to dischargeability of particular debts under 11 U.S.C. § 523.").

A debtor's ability to pay creditors, by itself, is not enough to support a finding of bad faith. *In re Smith*, 507 F.3d 64, 74 (2d Cir. 2007) (ability to repay debts is not sufficient, but is part of the inquiry); *McDow v. Smith*, 295 B.R. 69, 81 (E.D. Va. 2003) (high annual income and lavish lifestyle were insufficient cause for § 707(a) dismissal); *In re Quinn*, 490 B.R. at 617 (same). Courts rely on the legislative history to support this line of reasoning. *In re Perlin*, 497 F.3d 364, 374 (3rd Cir. 2007) (dismissal based on ability to repay is expressly prohibited by the legislative history); *In re Marks*, 174 B.R. 37, 41 (E.D. Pa. 1994); *In re Blackmon*, 3 B.R. 167, 169 (Bankr. S.D. Ohio 1980); *In re Nina Merchandise Corp.*, 5 B.R. 743, 746 (Bankr. S.D.N.Y. 1980). The House and Senate reports state in part:

> The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy.

S. Rep. No. 989, 95th Cong., 2d Sess. 94 (1978); H.R. Rep. No. 595 95th Cong., 1st Sess. 380 (1977). In *In re Goulding* the bankruptcy court, citing the foregoing language, said "It is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future prospects is not 'cause' as the word is used in Section 707 for dismissal." 79 B.R. 874, 876 (Bankr. W.D. Mo. 1987).

Bankruptcy courts should not use "bad faith" as "a loose cannon which is to be pointed in the direction of a debtor whose values do not coincide precisely with those of the court." *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994) (quoting *Sinkow v. Latimer (In re Latimer)*, 82 B.R. 354, 364 (Bankr .E.D. Pa. 1988)). Rather, dismissing Chapter 7 cases for bad faith is a severe consequence that is appropriate only in "egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a single debt based upon conduct akin to fraud, misconduct or gross negligence." *In re Perlin*, 497 F.3d 364, 373 (3rd Cir. 2007) (citation omitted); *In re Quinn*, 490 B.R. at 618 ("dismissal for 'cause' . . . based on debtor's lack of good faith must be reserved for truly egregious cases"). Further, courts have discretion when ruling on a motion to dismiss under § 707(a). *Gilboy v. Reukema,* 2015 WL 1921618, at *1 (2d. Cir. 2015) (decision of bankruptcy court on a § 707(a) motion is reviewed for abuse of discretion).

The Crawfords rely on Debtors' relatively high income, overstated debts, refusal to pay the Judgment, and home improvements as the primary indicators of bad faith. In response, Debtors contend that their reduced income because of Mr. Pike's injury, prospect of further income reductions as their minor children achieve majority, and increased medical expenses

have burdened the family. They argue that they were not able to pay the Judgment and need bankruptcy relief.

The Court weighs the bad faith factors as follows:

| Factor | Good Faith | Bad Faith | Comment |
|---|---|---|---|
| | | | |
| Did debtor manipulations frustrate a particular creditor? | X | | Debtors' bankruptcy filing was prompted mainly by the Judgment, but there is no evidence of any manipulations that frustrated creditors. |
| Any attempt to pay creditors? | | X | Debtors have made no attempt to pay Movants; there is no evidence regarding their attempt to pay other creditors. |
| Did Debtors fail to make significant lifestyle changes? | X | | Debtors have a relatively modest lifestyle. |
| Could Debtors pay substantial portion of debts? | X | | It is possible Debtors could reduce their expenses and pay creditors something. The facts are not very stark, however. The means test did not show any presumption of abuse. The Crawfords did not seek dismissal under § 707(b). Debtor's decision to file Chapter 7 rather than pay some creditors some amount does not seem unreasonable, given their financial situation. |
| Did Debtors inflate expenses to disguise financial well-being? | X | | Although Debtors reported some debts twice on their schedules, it was for noticing purposes. Debtor's monthly expense budget does not appear to be inflated. |
| Are Debtors overutilizing the Code to the detriment of creditors? | X | | Although Debtors also filed a bankruptcy case in 1998, it does not appear Debtors are overutilizing the Bankruptcy Code. |
| Did Debtors reduce their creditors to a single creditor in the months prior to filing his petition? | X | | No, Debtors have 8-9 other creditors holding dischargeable claims. |
| Did Debtors file the case in response to a judgment? | | X | Debtors most likely filed bankruptcy to avoid paying the Judgment. |
| Is it unfair to use Chapter 7? | X | | No. |
| Are Debtors paying debts to insiders? | X | | No. |
| Did Debtors transfer assets? | X | | There was no evidence Debtors omitted any material assets on their bankruptcy schedules or transferred any assets. |

| Did Debtors employ a deliberate and persistent pattern of evading a single major creditor? | X | | No evidence that Debtors "evaded" the Crawfords or any other creditor. The bankruptcy filing came shortly after entry of the Judgment |
|---|---|---|---|
| Did Debtors fail to make candid and full disclosure? | X | | No evidence that Debtors failed to make candid and full disclosures. Debtors had some mistakes in their schedules and Statement of Financial Affairs, but the mistakes appeared to be innocent, and were not materially misleading. |
| Are debts modest in relation to assets and income? | X | | Yes. Financial hardship appears to result from Mr. Pike's disability and subsequent decrease in household income, together with nondischargeable debts owed for student loans and improperly taken unemployment compensation. |
| Were there multiple bankruptcy filings or other procedural gymnastics? | X | | No. The prior bankruptcy filing was in 1998 and had nothing to do with the Debtors' current troubles and dispute with the Crawfords. |

All things considered, Debtors' case is more persuasive. In both number and weight, the "bad faith" factors weigh heavily in the Debtors' favor. Debtors' conduct does not satisfy the high standard imposed under § 707(a) to warrant dismissal for bad faith filing. Based on the evidence in the record, the Court is satisfied that the case was filed in good faith.

### III.  CONCLUSION

The facts presented in this case fail to meet the high standard required for bad faith dismissal under § 707(a). The Court therefore will deny the Motion. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

-11-

Entered: July 10, 2015.

Copies to:

Angela C. McGuire-Pike
6020 Taurus Avenue NW
Albuquerque, NM 87114

Richard Pike
6020 Taurus Avenue, NW
Albuquerque, NM 87114

Brian Crawford
10512 Galileo Street NW
Albuquerque, NM 87114

Michelle Crawford
10512 Galileo Street NW
Albuquerque, NM 87114